SULIN v. ROCHESTER & PITTSBURGH COAL & IRON CO. (No. 7851.)

(Supreme Court, Appellate Division, First Department. November 19, 1915.)

1. MASTER AND SERVANT ☞278—INJURY TO SERVANT—NEGLIGENCE OF MINE SUPERINTENDENT—DEFECTIVE PROPS—NOTICE—EVIDENCE.

In an action by a coal miner for injuries received while working in a Pennsylvania coal mine, evidence *held* insufficient to charge the mine superintendent with notice of the mine foreman's neglect of duty in using defective props.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 956-958. 960-969, 971, 972, 977; Dec. Dig. ☞278.]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. MASTER AND SERVANT ⬥⟶95½—INJURY TO SERVANT—MINE SUPERINTEND-
ENT—CARE REQUIRED.

Where reasonable men might differ as to the suitableness of materials used under the direction of the mine foreman, it is not the duty of the mine superintendent under the law of Pennsylvania to intervene, so as to render the owner liable, on his failure to do so, for injuries to a miner.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 358; Dec. Dig. ⬥⟶95½.]

Appeal from Trial Term, New York County.

Action by Matthew Sulin against the Rochester & Pittsburgh Coal & Iron Company. From a judgment for plaintiff, defendant appeals. Reversed.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

Samuel M. Havens, of Rochester, for appellant.
Roger Foster, of New York City, for respondent.

LAUGHLIN, J. This is an action for personal injuries sustained by the plaintiff while in the employ of the defendant in a bituminous coal mine in Pennsylvania. The liability of the defendant is regulated by the statutory law of Pennsylvania, as construed by the courts of that state. The statutes and decisions have been sufficiently stated and considered in the opinion in Firment v. Rochester & Pittsburgh Coal & Iron Co., 155 N. Y. Supp. 879, argued and to be decided herewith.

[1] In this case, also, the defendant employed a duly certified mine foreman and a superintendent. It has been held liable on the theory that the roof of a heading in the mine was insecurely supported, and that the superintendent had notice of the dangerous condition and of the failure of the mine foreman to perform his duty, and with such notice and knowledge failed to take steps to render the mine safe. The plaintiff was employed as a "spragger." His duties were in connection with the operation of the cars in the heading, and were principally to throw small blocks of wood, called "sprags," between the spokes of the wheels to stop the cars, and to throw switches and to couple cars. On the occasion in question, he was riding on the front of an electric motor car, which was pushing a train of 30 cars loaded with coal in one of the headings toward the slope or shaft of the mine, and part of the roof of the heading, consisting of about a cubic yard, or about a ton in weight, fell upon the tracks at the front end of the train, or between and upon some of the cars near the front end, throwing from 10 to 13 cars off the track, causing the plaintiff's foot to be caught between the bumper on the motor car and the bumper on the car ahead, to which it was coupled, inflicting injuries for which he has recovered.

The testimony of the plaintiff tends to show that, about three or four months prior to the accident, part of the roof of the heading fell in at the same point, and that some of the timbers supporting it also fell; that the mine foreman caused the roof to be propped up again, and the men who did the work used two old, cracked, timbers and one new timber, which was also somewhat cracked and contained a knot; that he

stated to the men who were doing the work, in substance, that one or more of the timbers was unsafe, and one of them said, "We will get it up; fix it up as quick as timber comes in;" that eight weeks before the accident he stated to Wardrop, the mine foreman, as they were riding under this point, "Mr. Wardrop, see that; that is pretty bad there; them crossbars is broken there;" and that Wardrop replied, "We will get them fixed up as quick as we can;" and on cross-examination he said that on that occasion he stated to Wardrop, "Mr. Wardrop, that is pretty bad there and needs to be repaired up;" and that Wardrop's reply was, "Well, I will try to attend to it;" that about two weeks before the accident he went to Harvey, the then mine foreman, and said, "Them there crossbars what them timber men put up there is broken, and one was cracked, and they ought to be fixed;" to which Harvey replied, "The timber men is awful busy, and they ain't got no time, and as quick they will have time I will send them up, to get fixed up;" that about six weeks before the accident he said to Fleming, the superintendent, "Them there crossbars is broken there;" to which Fleming replied, "We will get them repaired up as quick as we possibly can;" and on cross-examination he said that what he told Fleming was, "Mr. Fleming, that is pretty bad there; that needs fixing; the crossbar is breaking, broken there;" and that Fleming's reply was, "Well, we will have it attended to;" that about one week before the accident he spoke to White, who was then superintendent near the point, about this matter, but he does not say what he said to him, and that White replied, "We will get it attended to as quick as we can;" and that while he was being carried out along the side of the train to the slope, or shaft, after the accident, he observed that the point where the material fell was the place where the cave-in had occurred before, and where these timbers had been put up to support the roof, and that they had fallen.

There is no evidence, however, that the timbers were in a different condition, either before or after the accident, from that in which they were when they were inserted in place to support the roof. Moreover, the uncontroverted testimony of four witnesses called by the defendant shows that the timbers which fell at the time of the accident were sound, and it appears that they were used again after the accident to support the roof. The mine foreman, as was his duty under the statute (P. L. Pa. 1911, p. 769, art. 4, § 18), made a daily report with respect to the condition of the mine, and that no dangers had been reported, or, if reported, that they had been remedied. The superintendent was requested to read and sign these reports weekly. He had, therefore, the certificate of the mine foreman that at the close of each day the mine was in a safe condition. Whatever the condition of the roof of the mine may have been when plaintiff drew the attention of the superintendent to it, these reports informed the superintendent that any dangerous defects that had come to the attention of the mine foreman had been remedied. The only complaint shown to have been made by plaintiff, however, to the superintendents, was with respect to the timbers. Assuming that the notice to the superintendent was sufficient to charge him with knowledge that these timbers were in the condition described by the plaintiff, there is no evidence that the accident was in any man-

ner due to the defects in the timbers shown by his testimony. The timbers were used by needling one end into the side of the heading and supporting the other end by a prop. The evidence shows that the props and the ends supported by them fell; but that the cause of their falling was not shown. It is claimed on the part of the plaintiff that it was due to the defects in the timbers, and on the part of the defendant that a car was derailed in some manner and knocked down one or more of these props; but there is no evidence to sustain either theory.

[2] There is a conflict between the testimony of the plaintiff and that of the other witnesses with respect to where the material and timbers were with reference to the front of the train after it stopped at the time of the accident. The plaintiff's testimony indicates that they were at the front end, and it is argued in his behalf that the cave-in occurred before the train reached the point, and that this threw the cars off the track. The evidence on the part of the defendant tends to show that the front car must have passed the point before the roof caved in, for according to that evidence no material or timber was on the track in front of the train, and the material and timbers fell on the third and fourth or the fourth and fifth cars. That conflict, however, is not very material, for I am of opinion that the crucial point in the case is whether the defects of which the defendant's superintendent had notice rendered the timbers unsuitable for the purpose and were of such a character as to charge the superintendent with knowledge that the mine foreman had not performed his duty, and whether those defects were a contributing cause to the caving in of the roof of the heading. The duty to use proper timbers and to install them and their supports in a manner to render the mine safe devolved on the mine foreman, and therefore the defendant should not be held liable, and is not liable under the authorities cited in the other opinion, unless the evidence clearly shows that he failed to perform his duties, and that the superintendent had notice both of the defective condition and of the default of the mine foreman, or of facts and circumstances charging him with notice thereof, for it was not the province of the superintendent to intervene in a case where reasonable men well might differ with respect to the suitableness of the material used in the safety of the mine. See Peters v. Vesta Coal Co., 243 Pa. 241, 90 Atl. 65.

I am of opinion that the plaintiff wholly failed to bear the burden of proving the facts in this regard, essential to entitle him to recover, and that in no view of the case is the evidence sufficient to support the verdict. The record does not show that the claim was made upon the trial that, if these timbers were defective, there was no evidence to show that such defects were a contributing cause to the accident. Although a motion for a nonsuit and for a dismissal of the complaint was made, the exceptions to the denial thereof are not assigned as error. It may be that the broken or cracked condition of the timbers rendered them unsuitable for supporting the roof of the mine, and that they sagged or were not firm in sustaining any weight that came upon them, but that was not shown; and if in any view of the evidence an inference to that effect might be shown, we think the plaintiff has not sustained the burden of proof on that point. I am of opinion, there-

fore, that the complaint should not be dismissed, but that a new trial should be granted.

It follows that the judgment and order should be reversed, and a new trial granted, with costs to appellant to abide the event. Order filed All concur.