FIRMENT v. ROCHESTER & PITTSBURGH COAL & IRON CO.  (No. 7850.)

(Supreme Court, Appellate Division, First Department.  November 19, 1915.)

1. EVIDENCE ☞35—LAW OF FOREIGN STATE—JUDICIAL NOTICE.
   In a suit on a cause of action which is given by the law of another state, the courts of the state where suit is brought must declare the law of the state of origin only from such decisions and statutes thereof as are introduced in evidence, and cannot consider decisions or statutes of such state not introduced.
   [Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 35, 51; Dec. Dig. ☞35.]

2. MASTER AND SERVANT ☞95½—INJURY TO SERVANT—SAFE PLACE TO WORK —PENNSYLVANIA COAL MINE—SUPERINTENDENT—DUTY.
   The duty of the mine superintendent of a bituminous coal mine in Pennsylvania is not restricted to merely calling upon the mine foreman to remedy defective and unsafe conditions in mine, but to remedy such conditions himself upon the failure of the foreman so to do promptly.
   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 358; Dec. Dig. ☞95½.]

3. MASTER AND SERVANT ☞278—INJURY TO SERVANT—DEFECTIVE CONDITIONS —NOTICE TO MINE SUPERINTENDENT.
   In an action by the widow of a coal miner to recover against the owner for the wrongful death of her husband on a cause of action arising in Pennsylvania, evidence held to charge the mine superintendent with notice of the defective condition of an electric wire.
   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 956–958, 960–969, 971, 972, 977; Dec. Dig. ☞278.]

Appeal from Trial Term, New York County.

Action by Susana Firment against the Rochester & Pittsburgh Coal & Iron Company.  Judgment for plaintiff, and defendant appeals.  Affirmed.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

Samuel M. Havens, of Rochester, for appellant.
Roger Foster, of New York City, for respondent.

LAUGHLIN, J.  On the 20th day of July, 1912, Steven Firment, while in the employ of the defendant in a bituminous coal mine in Pennsylvania, came in contact with an electric wire and was killed by the current of electricity.  The plaintiff is his widow, and she brought this action pursuant to the provisions of P. L. p. 674, §§ 18 and 19, of the year 1851, and P. L. p. 309, §§ 1 and 2, of the year 1855, of

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

that state, which confer a cause of action upon a widow whose husband's death has been caused by negligence. At the close of the evidence, both parties moved for a direction of a verdict, thereby submitting the facts to the court, and the court directed a verdict in favor of the plaintiff for the stipulated damages.

More than ten persons were employed in the defendant's mine, and under the Bituminous Mine Law of the year 1911 (P. L. 756), in such case, those employed in the mine and the entire inside workings of the mine were required to be placed in charge of a mine foreman, who had had practical experience and had passed an examination by the state board and had been duly certified by it, and whose duty it was to devote his entire time to the promotion of the safety of those employed in the mine, and to that end he was authorized to employ such assistants and fire bosses as he deemed necessary, and, where electricity was used for power, a competent mine electrician was required to be employed by the operator, "who shall have full charge of the electrical operators in the mine, but shall be subject to the authority of the mine foreman." The defendant employed a duly certified foreman in the mine in question, and also a mine superintendent and electrician. Article 3 of the same law provides, among other things, that it shall be the duty of the superintendent, on behalf and at the expense of the operator, to keep on hand at each mine a sufficient quantity of materials and supplies required to preserve the health and safety of the employés, "as ordered by the mine foreman and required by this act," and, in the event of his inability so to do, he is required to notify the mine foreman, who is then required to withdraw the men from the mine, or portion of the mine affected, until such materials or supplies are received; and the superintendent is forbidden to obstruct the mine foreman or other officials in the fulfillment of any of their duties, but he is required to direct that the mine foreman and all other employés under him "comply with the law in all its provisions, especially when his attention is called by the inspector to any violation of the law." The duty is also imposed upon the superintendent by the law, when informed that the mine foreman, assistant mine foreman, or fire boss neglects his duties, or becomes incapacitated by drunkenness or other cause for the proper performance of his duties, to make an investigation, and if he finds evidence to sustain the charge to inform the inspector, whose duty it shall be to institute a proceeding in the court of common pleas for the withdrawal of the certificate of the delinquent.

Under the decisions of the Supreme Court of Pennsylvania, construing these and other similar statutory provisions, the operator of a mine is not liable for the negligence of the mine foreman, or of those employed by him pursuant to statutory authority; but where the superintendent has knowledge of the fact that the mine foreman, or any one so employed by him, has neglected his duties, and the mine is in a defective or unsafe condition, it has been further held by the same court, under a statute the provisions of which on this point have been construed as the same in effect, that the duties of the superintendent are not discharged by merely calling upon the mine foreman to remedy

the defect and make the mine safe, but that he is required to remedy the defects and make the mine safe himself, in the event that the mine foreman fails so to do. Wolcutt v. Erie Coal & Coke Co., 226 Pa. 204, 75 Atl. 197. See, also, Hood v. Connell Anthracite Mining Co., 231 Pa. 647, 81 Atl. 56; Dempsey v. Buck Run Coal Co., 227 Pa. 571, 76 Atl. 745; Collins v. Northern Anthracite Coal Co., 241 Pa. 55, 88 Atl. 75; Bogdanovicz v. Susquehanna Coal Co., 240 Pa. 124–9, 87 Atl. 295; Pittsburg-Buffalo Co. v. Cheko, 204 Fed. 353, 124 C. C. A. 451.

[1] It appears by one of the decisions introduced in evidence (Simmons v. Lehigh Valley Coal Co., 240 Pa. 354, 87 Atl. 568) that there is a statute relating to anthracite mines imposing a greater duty with respect to passageways on the operator of the mine than that declared in the authorities hereinbefore cited, or imposed by the statutory provisions introduced in evidence applicable to bituminous mines; and it would seem from a later decision by the Supreme Court of Pennsylvania (Watson v. Monongahela River C. Coal & Coke Co., 247 Pa. 469, 93 Atl. 625), which, however, could not have been introduced in evidence, for it had not been decided at the time of the trial, and was not cited on the argument of this appeal, that there is a tendency on the part of the courts to extend the liability of the operator; but the case must be decided on the provisions of statutory law and on the decisions introduced in evidence.

In the case at bar an electric wire was suspended from the roof of one of the mine headings over one side of the track at an elevation of about 5 feet above the track on which the cars were operated. The testimony of the son of the decedent, who worked in the mine, showed that the hangers through which the wire was run were about 20 feet apart at the place where the accident occurred, and that one of them, which had been driven into the roof of the heading from 4 to 6 inches, had become loose and had dropped down about one-half an inch, causing the wire to sag; and in one view of his testimony, the wire had sagged about 6 inches, but in another view of his testimony it had sagged more, for he says that originally it was the height of his chin, and that he observed that it had sagged to the height of his collar bone about two weeks before the accident, and at that time he drew the attention of the mine foreman to its condition, and that nothing was done to remedy it, and it continued to sag, and that at the time of the accident it was at the height of his breast bone. He also testified that four or five days prior to the accident he drew the attention of the superintendent, who was passing the point, to the sagged and sagging condition of the wire, by saying, "Mr. Scott, this wire is getting lower and lower every day;" and the superintendent looked at it and nodded his head, but said nothing. Nothing was done to remedy the condition of the wire prior to the accident. The superintendent was not called as a witness, and the defendant made a formal concession on the trial, as follows:

"The defendant concedes the defective conditions proven by the plaintiff, and the notice thereof to the mining foreman and to the superintendent, as proven by the plaintiff."

There is no evidence that the superintendent either directed the electrician, to whom it appears he at times gave orders, to repair the line, or called upon the mine foreman so to do, as he should have done pursuant to the requirements of the statute. See Dempsey v. Buck Run Coal Co., 227 Pa. 571, 76 Atl. 745, and Reeder v. L. V. Coal Co., 231 Pa. 563, 80 Atl. 1121. The maintenance and repair of the electric wire fell within the jurisdiction and duty of the electrician and subject to the "authority" of the mine foreman. It seems to me, therefore, that the duty to repair the line devolved on the defendant, who was not, as in the case of the mine foreman, restricted with respect to his selection. It is not claimed, however, that defendant is liable for any negligence on the part of the electrician, or that the latter was negligent.

[2] We think that the recovery can also be sustained on plaintiff's theory of liability. The cars were operated on the tracks in the headings by electric power transmitted over wires suspended as already stated; but the cars on the tracks branching off of the main tracks along the heading into the side rooms, where the mining operations were progressing, were operated by being pushed by the men. The only light in that part of the mine was from lamps on the miners' hats. At the time of the accident the decedent and his son were pushing a car loaded with a ton of coal from one of these rooms onto the track on the heading, and in doing this they were at the rear of the car, stooping over, one on each side, with one shoulder against the car, the top of which was about 3 feet above the ground. As they came to the track on the heading, the decedent was on the side over which the electric wire was suspended, and at about the point where it had sagged the most he received the electric shock which caused his death. The son of the decedent did not observe the position of his father at that time, but he had observed that his father was stooping over, pushing the car, just before the accident. It does not appear whether, in this stooping position in pushing the car, the head of the decedent was high enough to come in contact with the wire, or whether the electricity left the wire without his head coming in contact with it. There is no evidence that the decedent worked under this wire prior to that occasion, or that he knew its condition. It is not claimed that he was guilty of contributory negligence, or assumed the risk. The only contentions made in behalf of the appellant are that the defendant was under no obligation to remedy the defect, and that the entire duty in that behalf rested on the mine foreman, and further that the notice to the superintendent was insufficient to charge him with knowledge that the mine foreman had neglected his duty. Under the Pennsylvania authorities already cited, we are constrained to hold that it was the duty of the superintendent, when knowledge of the defect endangering the safety of the employés in the mine was brought home to him, to call upon the mine foreman to remedy it and make the mine safe, and in the event of his failure to do so at once the duty devolved on the superintendent.

[3] The cause of action arose in Pennsylvania and we are only enforcing the law of that state as declared by the statute as con-

strued by its courts. The notice to the superintendent was sufficient, not only to show that the wire was in a dangerous condition, but that the mine foreman had neglected his duty to remedy it, for the superintendent was informed that the wire was getting lower and lower every day, which clearly showed that it had been in a dangerous condition for some time. The wire was originally strung close to the ceiling or roof of the heading, and it was sufficiently dangerous in that position, for the evidence tends to show that the roof of the heading was only a few inches over 5 feet above the track. A man of average height, therefore, could not walk upright in the heading; and it is manifest, in these circumstances, that any sagging of this wire, charged with a strong current of electricity, tended to increase the danger to the employés; and when it was permitted, as the evidence shows, to sag more than 6 inches, it seriously endangered the employés and rendered working in the heading, as the decedent was obliged to do, unsafe.

The case of Peters v. Vesta Coal Co., 243 Pa. 241, 90 Atl. 65, upon which the appellant relies with respect to the insufficiency of the notice that the mine foreman had neglected his duties, is not, we think, in view of the other decisions cited, controlling in the case at bar. There the complaint was a failure to furnish longer posts to be used in supporting the roof of the mine where the plaintiff was excavating coal, and he knew better than any one else of the danger of proceeding with the work with the shorter posts that had been furnished, and had full knowledge of the alleged existing dangerous conditions, owing to the use of short posts, and had means at hand, which the court held it was his duty to use to remedy them himself, and the decision was placed largely on the ground that he assumed the risk. Moreover, stress was laid in the opinion in that case on the fact that no complaint had been made to the mine foreman with respect to the alleged dangerous condition of the mine, on account of which the employé was desirous of obtaining longer posts and applied to the superintendent therefor; whereas, in the case at bar, it appears that complaint had been made to the mine foreman some two weeks before the accident, and before notice to the superintendent.

It follows, therefore, that the judgment and order should be affirmed, with costs. Order filed. All concur.